UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LINDA ANN W.,[1] | ) |
| | ) |
| Plaintiff, | ) No. 18 cv 2703 |
| | ) |
| v. | ) Magistrate Judge Susan E. Cox |
| | ) |
| NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Linda Ann W. ("Plaintiff") appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her disability benefits and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff has filed a Plaintiff's Amended Brief [dkt. 16], which the Court will construe as a motion for summary judgment; the Commissioner has filed a cross-motion for summary judgment [dkt. 21]. For the reasons detailed below, the Court grants Plaintiff's motion for summary judgment [dkt. 16], denies the Commissioner's motion for summary judgment [dkt. 21], and remands this matter for further proceedings consistent with this Memorandum Opinion and Order.

**I. Background**

    **a. Procedural History**

In November 2011, Plaintiff applied for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423(d), and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1382, 1382c(a). [Administrative Record ("R.") 130, 148.] After her applications were denied initially and on reconsideration, Plaintiff requested an

---

[1] In accordance with Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name(s).

administrative hearing. [R. 158.] In July 2013, Plaintiff appeared with counsel and testified at a hearing before Administrative Law Judge ("ALJ")[2] Helen Cropper. [R. 68-126.][3] A vocational expert also testified. *Id.* On September 20, 2013, ALJ Cropper determined, at Step Five, that Plaintiff was not disabled. [R. 143-44.] On July 10, 2014, the Appeals Council denied Plaintiff's request for review of ALJ Cropper's decision. [R. 150.] Plaintiff did not seek judicial review of the Commissioner's final decision related to her November 2011 application for benefits.

On July 29, 2014, Plaintiff reapplied for DIB and SSI, claiming disability since September 21, 2013, *i.e.*, the day after ALJ Cropper's decision. [R. 14.] After her 2014 applications were denied initially and on reconsideration, Plaintiff requested a *de novo* ALJ hearing. [R. 14, 237, 241, 248, 255.] On January 17, 2017, Plaintiff appeared with counsel and testified at an administrative hearing before ALJ Kimberly S. Cromer. [R. 32-65.] In addition, Mark Oberlander, Ph.D., testified as a psychologist medical expert ("ME"), and Lee Knutson testified as a vocational expert ("VE"). *Id.* On May 1, 2017, the ALJ issued a written decision denying Plaintiff disability benefits. [R. 14-24.] On February 13, 2018, the Appeals Council denied Plaintiff's appeal, and the ALJ's decision became the final decision of the Commissioner. [R. 1-6.]

b.   **Relevant Medical Background**[4]

Plaintiff was born in June of 1969 and was 44 years old on her alleged disability onset date. [R. 23.] Plaintiff has a long history of insulin dependent diabetes mellitus, which has been regularly monitored and medicated, but which has often been poorly controlled. [R. 17.] Plaintiff was ultimately prescribed an insulin pump in order to obtain better diabetic control, but she had not been compliant

---

[2]   Because there are two ALJ's who have rendered decisions regarding Plaintiff's eligibility for DIB and SSI, we clarify that throughout this opinion, our use of the term ALJ refers to ALJ Cromer unless otherwise specified.

[3]   Plaintiff makes an argument that the transcript of the July 11, 2013 administrative hearing was never admitted into evidence, but it appears to the Court it was indeed properly made a part of the record in this case. [R. 35 (entering exhibits through B35F).] However, there seems to be no import to this argument other than a point of alleged error.

[4]   As no party's briefs set forth the medical background of Plaintiff, we have largely adopted the medical background set forth in the ALJ's opinion.

in changing the pump site recommendations and with keeping a record of her blood sugars. *Id.* Nonetheless, on June 17, 2016 she was doing very well. *Id.*

Plaintiff has mild diabetic retinopathy, but good visual acuity despite the presence of bilateral cataracts. *Id.* She has had no treatment to address diabetic retinopathy. *Id.* In a Vision Impairment Questionnaire, Dr. David S. Springer, M.D. indicated he sees Plaintiff once a year to monitor diabetic retinopathy. [R. 533-38.] He indicated that Plaintiff's visual acuity was 20/25 in each eye. *Id.* In June of 2016, her visual acuity was 20/40, intraocular pressures were good, and she had full visual fields. *Id.*

Despite Plaintiff's complaints of chest pain and shortness of breath, in general, her cardiac testing was normal [R. 17.] An August 2014 transthoracic echocardiogram demonstrated a normal ejection fraction of 63%. *Id.* Plaintiff's shortness of breath and chest pain were attributed to pneumonia. *Id.* However, when Plaintiff failed to improve after a bout of pneumonia in November 2015, she was diagnosed with congestive heart failure and new cardiomyopathy with valvular disease, based upon extensive diagnostic testing performed during an inpatient hospital stay. *Id.* She was given a NYHA Class III rating.[5] *Id.* However, six months later, in May 2016, transthoracic echocardiography disclosed a normal ejection fraction of 60%. *Id.* In June 2016, she was given an improved NYHA Class I rating. *Id.* Subsequent testing, including a right heart catheterization and transthoracic echocardiography, disclosed that Plaintiff's cardiac status has been stable after treatment with diuretics and cardiac rehab. *Id.*

---

[5] The NYHA (New York Heart Association) rating system is the most commonly used system to classify patients' heart failure according to the severity of their symptoms. It places patients in one of four categories based on how limited they are during physical activity. Class I symptoms include: "No limitation of physical activity. Ordinary physical activity does not cause undue fatigue, palpitation, dyspnea (shortness of breath)." Class II symptoms include: "Slight limitation of physical activity. Comfortable at rest. Ordinary physical activity results in fatigue, palpitation, dyspnea (shortness of breath)." Class III symptoms include: "Marked limitation of physical activity. Comfortable at rest. Less than ordinary activity causes fatigue, palpitation, or dyspnea." Finally, symptoms of the most severe classification, class IV, include: "Unable to carry on any physical activity without discomfort. Symptoms of heart failure at rest. If any physical activity is undertaken, discomfort increases." American Heart Association, *Classes of Heart Failure*, https://www.heart.org/en/health-topics/heart-failure/what-is-heart-failure/classes-of-heart-failure (accessed March 28, 2019).

Plaintiff began treating at Dr. Ko's clinic in February 2009, and became a direct patient of Dr. Ko's in October 2011. [R. 514.] Dr. Ko reports that she sees Plaintiff every 1 to 3 months. [R. 483.] Since January 2009, Plaintiff has complained to Dr. Ko of severe fatigue and generalized weakness. [R. 514.] In November 2012, Dr. Ko diagnosed Plaintiff with Diabetes Mellitus Type II and Diabetic Retinopathy, and indicated that, in part, Plaintiff's "generalized fatigue and weakness" supported these diagnoses, and that Plaintiff's primary symptoms were "fatigue, weakness, and decreased concentration." [R. 483-84.] Dr. Ko opined that Plaintiff's fatigue prevents Plaintiff from performing her normal activities. [R. 514.] In particular, Dr. Ko opined that Plaintiff has significant limitations in doing repetitive reaching, handling, fingering, or lifting because she "is very easily fatigued and tires out." [R. 486.]

Another of Plaintiff's treating physicians, Dr. Stephanie Low, MD, filled out a Diabetes Mellitus Medical Source Statement in August 2015, opining that Plaintiff could only sit for 2 hours at a time and could only stand for 45 minutes at a time. [R. 893-96.] In total, during an 8 hour work day, Dr. Low felt that Plaintiff could sit for about 4 hours and could stand/walk for less than two hours. *Id.* Dr. Low wrote that Plaintiff would need to change positions at will during the day, as well as take unscheduled breaks throughout the day. *Id.* Finally, Dr. Low noted that Plaintiff would be off task for 20% of any typical given workday, and that she was likely to be absent from work because of her impairments more than 4 days a month on average. *Id.*

Turning to her mental impairment, Plaintiff sought and received mental health treatment and medication management for a diagnosis of depression, and she was given GAF scores of 62 and 69, which indicate mild symptoms.[6] By June of 2016, her depression was described as being in partial

---

[6] Although the Global Assessment of Functioning ("GAF") is not used in the most recent version of the Diagnostic and Statistical Manual of Mental Disorders ("DSM V"), it was used in the previous version of that text ("DSM IV"), and is often relied on by doctors, ALJs, and judges in social security cases. *See Steele v. Colvin*, 2015 WL 7180092 at *1 (N.D. Ill. Nov. 16, 2015). The lower the GAF score, the greater the degree of impairment. *Id.* A score between 41 and 50 indicates "serious symptoms" such as suicidal ideation, severe obsessional rituals, or frequent shoplifting or "any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep

4

remission. [R. 17.]

**c.    The ALJ's Decision**

On May 1, 2017, the ALJ issued a written decision denying Plaintiff disability benefits. [R. 14 -24.] At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of September 21, 2013. [R. 16.] At Step Two, the ALJ found that Plaintiff had the severe impairment of congestive heart disease, diabetes mellitus, degenerative disc disease of the lumbar spine, high frequency hearing loss, and depression. [R. 16-17.] The ALJ also detailed Plaintiff's nonsevere impairments of hyperlipidemia, hypertension, pulmonary hypertension, mild bilateral cataracts, iron deficiency anemia, Vitamin D deficiency, and right hand trigger finger/thumb. [R. 17-18.] At Step Three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. [R. 18.]

Before Step Four, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[7] to perform light work, with the following additional limitations: no climbing of ladders, ropes, or scaffolds; no crawling; no work at unprotected heights or around hazardous machinery; only occasionally pushing/pulling with her upper and lower extremities and reaching overhead bilaterally; only occasionally climbing ramps and stairs; only occasionally kneeling, crouching, balancing, and stooping; and avoidance of concentrated exposure to temperature extremes, high frequency noise, and vibration. [R. 20.] Additionally, the ALJ limited Plaintiff's RFC further: Plaintiff is limited to jobs involving "simple routine tasks, (low stress), with no hourly production quotas" (but work in which productivity is measured by what is produced by the end of the day was okay); Plaintiff cannot perform fast-paced assembly line work or work which is machine paced (but variable rate work was okay);

---

a job, cannot work)." A score between 51 and 60 represents "moderate symptoms" or "moderate difficulty in social, occupational, or school functioning." *Id.* Anything above 60 would indicate mild symptoms. *Id.*

[7]    RFC is defined as the most one can do despite one's impairments. 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff can work in proximity to others, but should have only occasional intermittent dealings with co-workers, supervisors, and the public, and she cannot perform tandem tasks or work involving a team. *Id.*

At Step Four, the ALJ determined that Plaintiff was not capable of performing her past relevant work as a forklift operator, but found her capable of performing her past relevant work as a cleaner/housekeeper (DOT #323.687-014; light exertion). [R. 23.] At Step Five, based on the VE's testimony, in addition to the light cleaner/housekeeper position, the ALJ made alternative findings of other occupations Plaintiff was capable of performing in light of her age, education, work experience, and RFC. [R. 24.] Specifically, the ALJ determined that Plaintiff could also perform the jobs of non-postal mail room clerk (DOT #209.687-026) and inspector/checker (DOT #222.687-014), which the ALJ found existed in significant numbers in the national economy. *Id.* The ALJ determined the VE's testimony was consistent with the Dictionary of Occupational Titles. *Id.* Because of these determinations, the ALJ found Plaintiff not disabled under the Act. *Id.*

## II. Social Security Regulations and Standard of Review

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. ALJs are required to follow a sequential five-step test to assess whether a claimant is legally disabled. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; and (3) whether the severe impairment meets or equals one considered conclusively disabling such that the claimant is impeded from performing basic work-related activities. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920(a)(4)(i)-(v). If the impairment(s) does meet or equal this standard, the inquiry is over and the claimant is disabled. 20 C.F.R. § 416.920(a)(4). If not, the evaluation continues and the ALJ must determine (4) whether the claimant is capable of performing his past relevant work. *Cannon v. Harris*, 651 F.2d 513, 517 (7th Cir. 1981). If not, the ALJ must (5) consider the claimant's

age, education, and prior work experience and evaluate whether she is able to engage in another type of work existing in a significant number of jobs in the national economy. *Id.* At the fourth and fifth steps of the inquiry, the ALJ is required to evaluate the claimant's RFC in calculating which work-related activities she is capable of performing given his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). In the final step, the burden shifts to the Commissioner to show that there are jobs that the claimant is able to perform, in which case a finding of not disabled is due. *Smith v. Schweiker*, 735 F.2d 267, 270 (7th Cir. 1984).

In disability insurance benefits cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence exists when a "reasonable mind might accept [the evidence] as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). While reviewing a commissioner's decision, the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Young*, 362 F.3d at 1001. Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and his conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal citation omitted). The Court cannot let the Commissioner's decision stand if the decision lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also*, 42 U.S.C.§ 405(g).

### III. Discussion

Among other things, Plaintiff asserts that the ALJ erroneously rejected the opinions of Plaintiff's treating physician, Dr. Low. We agree.

In making a disability determination, Social Security regulations direct an ALJ to evaluate each

medical opinion in the record. 20 C.F.R. § 416.927(c). The SSA will articulate "how persuasive we find all of the medical opinions and all of the prior administrative medical findings" in a claimant's case record. 20 C.F.R. § 404.1520c. An ALJ must provide "good reasons" for how much weight he gives to a treating source's medical opinion. *See Collins v. Astrue*, 324 Fed. Appx. 516, 520 (7th Cir. 2009); 20 C.F.R. § 416.927(c)(2) ("We will always give good reasons in our…decisions for the weight we give your treating source's opinion."). When an ALJ decides for "good reasons" not to give controlling weight to a treating physician's opinion, he must determine what weight to give to it and other available medical opinions in accordance with a series of factors, including the length, nature, and extent of any treatment relationship; the frequency of examination; the physician's specialty; the supportability of the opinion; and the consistency of the physician's opinion with the record as a whole. *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014); *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); see 20 C.F.R. § 416.927(c)(2)-(6). An ALJ must provide "sound explanation" for the weight he gives each opinion. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). If he does not discuss each factor explicitly, the ALJ should demonstrate that he is aware of and has considered the relevant factors. *Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013).

Here, the Court does not believe that the ALJ articulated "good reasons" for not giving controlling weight to Dr. Low's opinions. Even if there were sound reasons for refusing to give Dr. Low's opinions controlling weight, the ALJ still erred by assigning her opinions little weight without considering relevant regulatory factors under 20 C.F.R. § 404.1527(c) (*i.e.*, length, nature, and extent of treatment relationship; opinion's consistency with other evidence; explanatory support for the opinion; and any specialty of the treating physician). *Gerstner v. Berryhill*, 879 F.3d 257, 263 (7th Cir. 2018); *Scardamaglia v. Colvin*, 2015 WL 9582427, at *4 (N.D. Ill. Dec. 30, 2015) (an ALJ is required to point to specific reasons for rejecting the opinion of a treating physician) (citing *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

8

Here, the ALJ did not address a single 20 C.F.R. § 404.1527(c) regulatory factor when assigning little weight to Dr. Low's opinions. In fact, the only mention of Dr. Low or her opinions is a single sentence where the ALJ summarily ascribes little weight to Dr Low's opinions "for the same reasons as discussed above." Specifically, the ALJ wrote:

> For the same reason as those discussed above, I give little weight to the August 2015 opinion from Stephanie Low, M.D. in which she indicated that [Plaintiff] can walk and stand less than two hours in an eight hour day, and that she would be absent more than four days per month.

[R. 22.] The reader is left to search elsewhere for the reasons Dr. Low's opinion is discounted. The ALJ seemingly directs the reader to the same reasons the ALJ gave Dr. Ko's opinions little weight:

> This opinion lacks record support, does not outline specific exertional and nonexertional limitations, and puts forth a vocational assessment, which is outside the doctor's area of expertise.

*Id.* However, these reasons do not pass muster when it comes to Dr. Low; they fail to constitute substantial evidence, as discussed below.

First, although we do not fault an ALJ for merely for explaining his/her decision with less than ideal clarity, an ALJ must "explain[] his analysis of the evidence with enough detail and clarity to permit meaningful review." *Arnett v. Astrue*, 676 F.3d 586, 591-92 (7th Cir. 2012). The ALJ has not done that here. The ALJ failed to indicate or discuss any specific evidence that undermined Dr. Low's opinions. Moreover, we do not even know which of Dr. Low's opinions allegedly lacked record support. See, *inter alia*, *Ackerman v. Colvin*, 2014 WL 4100950, at *4 (W.D. Wash. Aug. 18, 2014) (ALJ failed to offer summary of conflicting medical or testimonial evidence or explanation of how limitations opined by treater lacked record support and, thus, rationale offered by the ALJ to reject treater's opinion was legally insufficient); *Osborne v. Comm'r of Soc. Sec.*, 2018 WL 2015817, at *3 (E.D. Wash. Apr. 30, 2018) (remanding, in part because ALJ did not indicate what record evidence specifically undermined treater's opinions.); *Ridio v. Colvin*, 2013 WL 1703062, at *11 (C.D. Cal. Apr. 19, 2013) (remanding, in part because ALJ failed to discuss any specific evidence that undermined

9

treater's opinion.) We do not find compelling the Commissioner's improper post hoc justifications and citations to evidence the ALJ herself did not indicate that she considered. *Johnson v. Astrue*, 2011 WL 2433498, at *6 (N.D. Ill. June 14, 2011) (citing *Parker v. Astrue*, 597 F.3d 920, 921-22 (7th Cir. 2010)).

Next, it appears the ALJ assigned little weight to Dr. Low's opinions because they did "not outline specific exertional and nonexertional limitations." [R. 22.] The Court disagrees that Dr. Low's records failed to set forth specific exertional and nonexertional limitations. In fact, Dr. Low's Diabetes Mellitus Medical Source Statement is highly specific as to the limitations Dr. Low places on Plaintiff. [R. 893-96.] It seems to this Court that this "reason" for rejecting Dr. Low's opinions really only applies to the ALJ's rejection of Dr. Ko's opinions.

Finally, similarly, it appears the ALJ assigned little weight to Dr. Low's opinions because they "put[] forth a vocational assessment, which is outside the doctor's area of expertise." [R.22.] The Court agrees with Plaintiff that:

> Dr. Low's specific opinions about Plaintiff's abilities to sit, stand, walk, her need for breaks, and her absence from work are opinions about Plaintiff's functional limitations, not a vocational assessment. An opinion that a claimant can stand a specific number of hours per day is not a vocational assessment, but an opinion about the claimant's ability to stand. An opinion about a claimant's need to miss work due to her impairments is not a vocational assessment, but an opinion about the functional impact of the claimant's impairments.

[Dkt. 16, p. 7.] The Commissioner does not address this contention. Again, it seems this "reason" for rejecting Dr. Low's opinions also only applies to the ALJ's rejection of Dr. Ko's opinions.

Ultimately, the only reason the ALJ gave for rejecting Dr. Low's opinions is the vague assertion that Dr. Low's opinions allegedly lack record support, which we have dispatched with above. Because the ALJ failed to address the relevant regulatory factors under 20 C.F.R. § 404.1527(c) as to Dr. Low, we are left to assume she never considered them. ALJ failed to consider the length, nature, and extent of Dr. Low's treatment relationship with Plaintiff; the consistency of Dr. Low's opinions with other

10

evidence of record; any explanatory support for Dr. Low's opinions; and any medical specialty of Dr. Low. *Gerstner v. Berryhill*, 879 F.3d 257, 263 (7th Cir. 2018). These factors may well have warranted the ALJ's discounting of Dr. Low's opinions, but we cannot say as they were unaddressed and we are unable to review them. Because of this explanatory void, the Court cannot trace the ALJ's reasoning behind the decision to discount Dr. Low's opinions and, thus, remand is required.

## IV. Conclusion

For the foregoing reasons, the Court must reverse and remand for proceedings consistent with this Memorandum Opinion and Order. At this time, the Court offers no opinion as to the other alleged bases of error in the ALJ's decision as raised by Plaintiff. Plaintiff's motion for summary judgment [dkt. 16] is granted; the Commissioner's motion for summary judgment [dkt. 21] is denied.

Entered: 4/12/2019

                                                                                                      _____
                                                                                                      Susan E. Cox,
                                                                                                      United States Magistrate Judge